**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

REYNALDO VERA PARRAZ, SR. and
ANGELITA SOTO "ANGIE" PARRAZ,

Plaintiffs,

vs. No. CIV 23-0500 JB/GJF

THE CITY OF CARLSBAD, a Municipality
Existing under the Law of the State of New
Mexico; DETECTIVE JOEY LANDGRAF and
TIM A. NYCE,

Defendants.

**MEMORANDUM OPINION**[1]

**THIS MATTER** comes before the Court on: (i) the Motion of Defendants the City of Carlsbad, Joey Landgraf and Tim A. Nyce for Partial Summary Judgment as to Count IV of Plaintiff's Complaint, Alleging False Arrest and Imprisonment Pursuant to the New Mexico Tort Claims Act, filed August 15, 2023 (Doc. 9)("Count IV Motion"); (ii) the Motion of Defendant City of Carlsbad for Partial Judgment on the Pleadings as to Count II of Plaintiffs' Complaint Asserting a Claim of Municipal Liability Pursuant to 42 U.S.C. § 1983, filed August 15, 2023 (Doc. 10)("Count II Motion"); and (iii) the Plaintiffs [sic] Motion to File First Amended Complaint Pursuant to Fed. R. Civ. Proc. 15 (a)(2), filed August 29, 2023 (Doc. 18)("Motion to Amend"). The

---

[1] On March 12, 2024, the Court enters an Order (i) granting the Partial Summary Judgment as to Count IV of Plaintiff's Complaint, Alleging False Arrest and Imprisonment Pursuant to the New Mexico Tort Claims Act, filed August 15, 2023 (Doc. 9); (ii) granting the Motion of Defendant City of Carlsbad for Partial Judgment on the Pleadings as to Count II of Plaintiffs' Complaint Asserting a Claim of Municipal Liability Pursuant to 42 U.S.C. § 1983, filed August 15, 2023 (Doc. 10); and (iii) denying the Plaintiffs [sic] Motion to File First Amended Complaint Pursuant to Fed. R. Civ. Proc. 15 (a)(2), filed August 29, 2023 (Doc. 18). See Order at 1-2, filed March 12, 2024 (Doc. 57). In the Order, the Court states that it will "issue a Memorandum Opinion at a later date more fully detailing its rationale for this decision." Order at 1 n. 1. This Memorandum Opinion is the promised opinion.

Court held a hearing on October 11, 2023. See Clerk's Minutes at 1, filed October 11, 2023 (Doc. 36). The primary issues are: (i) whether the Defendants are entitled to summary judgment in their favor as to the Plaintiffs' claims under the New Mexico Tort Claims Act, N.M.S.A. §§ 41-4-1 through 41-4-30 (1976, as amended through 2020)("NMTCA"), because of the NMTCA's statute of limitations; (ii) whether the Plaintiffs' Civil Complaint Violation [sic] of 42 U.S.C. § 1983 and the New Mexico Civil Rights Act, filed June 9, 2023 (Doc. 1-1)("Complaint"), filed originally in State district court on March 27, 2023, adequately pleads an allegation of municipal liability against the City of Carlsbad; and (iii) whether the Court should give the Plaintiffs leave to file an amended complaint. The Court concludes: (i) that the Defendants are entitled to summary judgment in their favor on the Plaintiffs' claims under the NMTCA, because the statute of limitations began to run on the Plaintiffs' claims for false imprisonment and false arrest when the Plaintiffs were "detained pursuant to legal process for trial," Gose v. Bd. of Cnty. Comm'rs of Cnty. of McKinley, 727 F. Supp. 2d 1256, 1266 (D.N.M. 2010)(Browning, J.)(citing Wallace v. Kato, 549 U.S. 384, 390 n.3 (2007)), which in this case occurred for Plaintiff Reynaldo Vera Parraz, Sr. when he waived his arraignment on December 30, 2020, and for Plaintiff Angelita Soto "Angie" Parraz when she waived her arraignment on January 28, 2021, both of which are more than two years before the Complaint was filed in State court on March 27, 2023, and thus the Court grants the Count IV Motion, see also Mondragon v. Thompson, 519 F.3d 1078, 1082-83 (10th Cir. 2008)("The false imprisonment ends for these purposes either when the victim is released or when the victim's imprisonment becomes 'pursuant to [legal] process -- when, for example, he is bound over by a magistrate or arraigned on charges.'" (quoting Wallace v. Kato, 549 U.S. at 389)); N.M.S.A. § 41-4-5 (1977)("Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death"); (ii) that neither the Complaint nor the proposed First Amended Civil

Complaint Violation [sic] of 42 U.S.C. §1983 and the New Mexico Civil Rights Act, filed August 29, 2023 (Doc. 18-1), adequately pleads an allegation of municipal liability against the City of Carlsbad; and (iii) the Court denies the Motion to File Amended Complaint without prejudice.

## ANALYSIS

This case arises from the Plaintiffs' allegations that the Defendants violate their federal and State constitutional rights and commit the State law tort of false arrest and imprisonment during an investigation into the murder of Daniel Martinez. See Count IV Motion at 2. This Memorandum Opinion addresses three different motions. First, the Court addresses the Count IV motion, in which the Defendants move for summary judgment on Count IV, arguing that the statute of limitations bars the Plaintiffs' state claim for false imprisonment. The Court concludes that the statute of limitations bars the Plaintiffs' State claim for false improvement, and, accordingly, grants the Count IV partial summary judgment motion and dismisses the State false imprisonment claim. Second, the Court addresses the Count II motion, in which the Defendants move for partial judgment on the pleadings, because the Complaint does not adequately plead an allegation of municipal liability against the City of Carlsbad. The Court concludes that the Plaintiffs' Complaint does not adequately plead an allegation of municipal liability against the City of Carlsbad, and, as a result, dismisses Count II, a § 1983 claim for supervisory and county liability against the City of Carlsbad. Finally, the Court addresses the Plaintiffs' Motion to Amend, and denies it.

### I. THE COURT GRANTS THE DEFENDANTS' COUNT IV MOTION FOR PARTIAL SUMMARY JUDGMENT, BECAUSE THE PLAINTIFFS' STATE FALSE IMPRISONMENT CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS.

Count IV of the Complaint alleges a complaint under the NMTCA for false imprisonment. See Complaint ¶ 58-64, at 15-16. The NMTCA contains a two-year statute of limitations. N.M. Stat. Ann. § 41-4-15(A) ("Actions against a governmental entity or public employee for torts shall

be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death . . . ."). The issue turns on when the statute of limitations for false imprisonment begins to run; whether it begins, as the Defendants assert, when the victim becomes held pursuant to legal process, or when the charges of arrest are dismissed against the victims, as the Plaintiffs assert. See Count IV Motion at 6; Plaintiffs Reynaldo Vera Parraz, Sr., and Angelita Soto "Angie" Parez Response to "Motion of Defendants the City of Carlsbad, Joey Landgraf and Tim A. Nyce for Partial Summary Judgment as to Count IV of Plaintiff's Complaint, Alleging False Arrest and Imprisonment Pursuant to the New Mexico Tort Claims Act" [Doc. 9], ¶ 1, at 6-7, filed August 29, 2023 (Doc. 17)("Count IV Response"). This difference is important, because the Complaint is filed on March 27, 2023. The Plaintiffs are held pursuant to legal process on December 30, 2022, for R. Parraz, and January 28, 2021, for A. Parraz, when the Plaintiffs respectively waive their arraignments. See Count IV Motion ¶¶ 3, 5, at 3. Wallace v. Kato, 549 U.S. 384, 389 (2007)("Reflective of the fact that false imprisonment consists of detention without legal process, false imprisonment ends once the victim becomes held pursuant to such process -- when, for example, he is bound over by a magistrate or arraigned on charges."). Over two years elapses for both Plaintiffs between the time when they are held pursuant to legal process, and when the Complaint is filed, thereby barring their false imprisonment claims if the statute of limitations begins to run when the Plaintiffs are held pursuant to legal process. Contrarily, the State does not drop the charges against the Plaintiffs until January 3, 2022. See Count IV Response at 8. Accordingly, if the statute of limitations does not begin to run until the charges are dropped, then the Plaintiffs' claim is not time-barred.

No New Mexico court has addressed the issue of when the statute of limitations begins to run on the claims of false arrest and false imprisonment. Because New Mexico has not directly addressed this issue, the Court must make a determination, under Erie Railroad Co. v.

Tompkins, 304 U.S. 64 (1938), how the Supreme Court of New Mexico would rule. See Pehle v. Farm Bureau Life Ins. Co., 397 F.3d 897, 901 (10th Cir.2005); UPS v. Weben Indus., 794 F.2d 1005, 1008 (5th Cir.1986)(stating that, "when making an Erie-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it."). The Court may consider all resources available, including decisions of New Mexico courts and the general trend of authority. See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1228 (10th Cir.2001).

The Court of Appeals of New Mexico has found that "[a] false arrest is merely one way of committing false imprisonment." Santillo v. N.M. Dep't of Pub. Safety, 143 N.M. at 88, 173 P.3d at 11 (citing 32 Am.Jur.2d False Imprisonment § 3 (2007)). The Supreme Court of the United States, in discussing the two common-law torts, also finds that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." Wallace v. Kato, 549 U.S. at 388-89 (2007). See D. Dobbs, The Law of Torts § 36, at 67 (2000)( "False arrest is a term that describes the setting for false imprisonment when it is committed by an officer or by one who claims the power to make an arrest."); J. Levin, Distinction Between False Imprisonment and False Arrest, 32 Am.Jur.2d False Imprisonment § 3 (2010)("Some courts have stated that false arrest and false imprisonment are distinguishable only in terminology. The two have been called virtually indistinguishable and identical."). While the Court need not decide, on this motion, whether in New Mexico the claims for false arrest and for false imprisonment are the same tort, the Court believes that the Supreme Court of New Mexico would find that claims for false arrest and false imprisonment accrue at the same time.

Although no New Mexico court has stated when the statute of limitations begins to run on false arrest and false imprisonment claims, the Restatement (Second) of Torts is clear for false imprisonment: "For false imprisonment, the statute [of limitations] begins to run only when the

imprisonment ends, since the period of imprisonment is treated as a unit." Restatement (Second) of Torts § 899, cmt. c. See Wallace v. Kato, 549 U.S. at 389 (stating that "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends."). Also, the Restatement (Second) of Torts appears to treat the tort of false arrest as the same tort or as a subset of the tort of false imprisonment. See Restatement (Second) of Torts § 654 ("If there is nothing more than the false arrest and the accused is released without any further proceeding, his remedy is an action for false imprisonment."); Restatement (Second) of Torts Index at 530 ("False Arrest: See False Imprisonment"). The Court concludes that, because New Mexico courts have been "very willing to adopt the view of the Restatement of Torts to assist development of new tort areas," Schmitz v. Smentowski, 109 N.M. at 393, 785 P.2d at 736, the Supreme Court of New Mexico would adopt the conclusion of the Restatement (Second) of Torts and hold that the statute of limitations for false arrest and for false imprisonment claims begins to run when the imprisonment ends.

False imprisonment does not end, however, as the Plaintiffs allege, when the charges against the victim are dropped. Instead, the Supreme Court has made clear that false imprisonment ends when the victim "becomes held pursuant to such process . . . ." Wallace v. Kato, 549 U.S. at 389 ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process -- when, for example, he is bound over by a magistrate or arraigned on charges.")(emphasis in original). Accordingly, the Plaintiffs' false imprisonment ends, and the statute of limitations begins to run, when they waive their arraignments -- for R. Parraz on December 30, 2020, and for A. Parraz on January 28, 2021 -- and begin to be held pursuant to legal process. See Count IV Motion ¶¶ 3, 5, at 3. The Plaintiffs do not file their Complaint until March 27, 2023. See Complaint at 1. Both Plaintiffs' state false imprisonment claims, therefore, are time-barred under the NMTCA two-year statute of limitations.

See N.M. Stat. Ann. § 41-4-15(A). As a result, the Court grants partial summary judgment on Count IV and dismisses Count IV.

## II. THE COURT GRANTS DEFENDANT CITY OF CARLSBAD'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO COUNT II, BECAUSE THE PLAINTIFFS DO NOT PLEAD ADEQUATELY AN ALLEGATION OF MUNICIPAL LIABILITY AGAINST THE CITY OF CARLSBAD, AND, AS A RESULT, DENIES THE PLAINTIFFS' MOTION TO AMEND AS FUTILE.

A municipality will not be held liable under § 1983 solely because its officers inflicted injury. See Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006). Rather, to establish municipal liability under § 1983, a plaintiff must demonstrate: (i) "an underlying constitutional or federal statutory violation"; (ii) that a municipal policy or custom exists; (iii) that there is a direct causal link between the policy or custom, and the injury alleged; and (iv) culpable state of mind. Harden v. Hedgecock, 181 F.4th 1094, 1101 (10th Cir. 2026). When a plaintiff brings a claim against a municipality for failing to train its officers adequately, the plaintiff must show that the municipality's inaction is the result of deliberate indifference to the inhabitants' rights. See Graves v. Thomas, 450 F.3d at 1218.

Establishing an informal policy or custom requires the plaintiff to show that the misconduct is "widespread" -- i.e., that it involves a series of decisions. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Although the existence or nonexistence of such a policy, practice, or custom is a question of fact for the factfinder, see Powers v. Hamilton Cnty. Pub. Defender Comm'n, 501 F.3d 592, 599 (6th Cir.2007)("[T]he evidence showed at least a disputed question of fact as to the existence of its alleged policy or custom . . . ."); Surprenant v. Rivas, 424 F.3d 5, 21 (1st Cir.2005)("O'Mara challenges the very existence of the interdicted policy, custom, or practice. Proving the existence of a policy, custom, or practice normally entails questions of fact." (citation omitted)); Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir.2000)("In order to avoid summary judgment, a plaintiff need only show that there is a question of fact regarding whether there is a city

custom or policy that caused a constitutional deprivation."); Gregory v. City of Rogers, Ark., 921 F.2d 750, 757 (8th Cir.1990)("[A]ppellants have raised material questions of fact whether it was the custom of the Rogers Police Department that officers could use their discretion in deciding whether or not to arrest intoxicated individuals, despite the state statute requiring their arrest."); Fancher v. Barrientos, No. CIV 11-0118 LH/LAM, 2013 WL 8600085, at *4 (D.N.M. Aug. 19, 2013) (Hansen, J.)("[A]t this time the record is unclear and it remain a question of fact as to which policy was in place."); Jacobs v. Dujmovic, 752 F.Supp. 1516, 1525 (D.Colo.1990)("[T]he Jacobs have failed to meet their summary judgment burden of showing that it adopted a policy, custom or procedure that caused constitutional violations, or that there is a question of fact as to the existence of such a policy."), it is not a fact that can be baldly asserted at the pleading stage, see Young v. City of Albuquerque, 77 F.Supp.3d 1154, 1187-88 (D.N.M. Dec. 24, 2014) (Browning, J.); Atwell v. Gabow, Nos. CIV 06-2262, 07-2063 JLK, 2008 WL 906105, at *6 (D.Colo. Mar. 31, 2008)(Kane, J.). Pleading a municipal policy, custom, or practice is like pleading the breach element of negligence, which is also ultimately a question of fact for the factfinder. The plaintiff cannot merely allege that there is a policy in place, but, rather, must plead facts that, if true, gives rise to a plausible inference that such a policy exists. With formal or written policies, satisfying this pleading standard is easy; the plaintiff can allege what the policy is and where it is codified. With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct -- no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible -- or use other evidence, such as a police officers' statements attesting to the policy's existence. The Tenth Circuit has not explicitly held as much, but has implied that district courts should analyze policies, practices, or customs under Monell as "legal conclusions" at the pleading stage -- which must be supported by facts,

rather than conclusorily alleged -- and not "facts" in and of themselves, to be taken as true at face value. See Martinez v. Winner, 771 F.2d 424, 443-44 (10th Cir. 1985).

The City of Carlsbad moves for partial judgment on the pleadings, arguing that the Plaintiffs' claim for municipal liability is deficient as a matter of law, because "[a]ll Plaintiffs have done here is allege post-incident discipline against Detective Landgraf and Nyce, extrapolated backwards, and then made 'naked assertions [of the existence of a policy, custom or practice] devoid of [any] factual enhancement.'" Count II Motion at 8 (citing Iqbal, supra.). In response to the City of Carlsbad's Count II Motion, the Plaintiffs file the Motion to Amend, requesting "that the Court allow a First Amended Complaint to be filed to comply with the more stringent rules of Civil Procedure applicable in the federal courts" after the case is removed from State court. Motion to Amend ¶ 2, at 1. See Draft Transcript of Hearing, at 26:23-27:6 (taken October 11, 2023)(Court, Dixon)("Tr."). Accordingly, the Court looks to both the Complaint and to the proposed Amended Complaint to determine if the Plaintiffs sufficiently plead a claim of municipal liability. If the proposed Amended Complaint sufficiently pleads a claim of municipal liability, then the Court will deny the Count II Motion and grant the Motion to Amend. If, however, neither the Complaint nor the proposed Amended Complaint sufficiently plead a claim of municipal liability, then the Court will grant the Count II Motion and deny the Motion amend as futile. See Mountain View Pharmacy v. Abbott Laboratories, 630 F.2d 1383, 1389 (10th Cir. 1980)(explaining that a court may properly deny leave to amend if amendment would be futile, and that futility warrants denial of leave to amend if the amended complaint is subject to dismissal).

The Plaintiffs allege that Landgraf and Nyce violate the Fourth and Fourteenth Amendments of the United States Constitution by wrongfully arresting the Plaintiffs without probable cause. See Amended Complaint ¶ 67, at 18. The Plaintiffs make the following statements in their Amended Complaint in an attempt to sufficiently allege a municipal policy or custom to support their

municipal liability claim:

> 57. Defendant owed a duty to the public, including Plaintiff to adequately train and supervise their law enforcement officers, including but not limited to Defendants Landgraf and Nyce to among other things: properly interact with the public.
>
> 58. Defendant City of Carlsbad, breached these duties above by failing to adequately train and supervise Defendants Landgraf and Nyce and other officers of the City of Carlsbad.
>
> 59. Defendant City of Carlsbad has failed to discipline either Landgraf or Nyce for their misconduct that resulted in the wrongful arrest and incarceration of Plaintiffs.
>
> 60. The failure of the City of Carlsbad to so discipline these Defendants demonstrates the existence of an entrenched culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference the making of improper detentions and arrests.
>
> 61. Plaintiffs are informed and believe that members of the Carlsbad Police Department, including but not limited to Landgraf and Nyce have individually and/or while acting in concert with one another, engaged in a repeated pattern and practice of making improper detentions and/or false arrest and incarceration against individuals including, but not limited to Plaintiff.
>
> 62. Plaintiffs are informed and believe that as a matter of official policy rooted in an entrenched posture of deliberate indifference to the constitutional rights of primarily minority citizens, Defendants have allowed the public, such as Plaintiffs to be abused by its police officers including by Defendants Landgraf and Nyce.
>
> 63. As a result of the pre-existing customs, policies, patterns, and/or practices of such abuses by members of Defendant's police department, Plaintiffs were subjected to the violation of their constitutional rights.

First Amended Civil Complaint Violation of 42 U.S.C. § 1983 and the New Mexico Civil Rights Act ¶¶ 57-63, at 16-18, filed August 29, 2023 (Doc. 18-1)("Proposed Amended Complaint"). It is not sufficient that the Plaintiffs make a claim of official policies on information and belief. Instead, at the pleading stage, the Plaintiffs must support these "legal conclusions" with alleged facts, instead of conclusory allegations. See Martinez v. Winner, 771 F.2d 424, 443-44 (10th Cir. 1985)(implying

that district courts should analyze policies, practices, or customs under Monell as legal conclusions at the pleading stage).

The Plaintiffs' claim for Monell liability stems from the following assertion:

> "The failure of the City of Carlsbad to so discipline these Defendants demonstrates the existence of an entrenched culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference the making of improper detentions and arrests." (citing Complaint ¶ 35). The Defendant [City of Carlsbad] knew that there had been continuous problems with "paperwork" that could lead to the false arrest and incarceration of a member of the public. Plaintiffs, therefore, state a plausible claim for supervisory liability.

Plaintiffs Reynaldo Vera Parraz, Sr., And Angelta Soto "Angie" Paraz's Response to "Motion of Defendant City of Carlsbad for Partial Judgment on the Pleadings as to Count II of Plaintiffs' Complaint Asserting a Claim of Municipal Liability Pursuant to 42 U.S.C. § 1983, at 9, filed August 29, 2023 (Doc. 16)("Count II Response"). As support for this allegation, the Plaintiffs point to several disciplinary incidents involving Landgraf and Nyce:

> Landgraf:
>
> (i) June 7th, 2021 for casting doubt on the integrity, honesty, moral judgment, or character of a supervisor; bringing discredit to the police department; impairing the police department's efficient and effective operation; (ii) May 3rd, 2021 violation of professional standards of conduct; (iii) May 17th, 2021 written warning because Defendant Landgraf's 'behavior and attitude' was a distraction to everyone in the Detective's Division, which cause 'discord amongst the Detectives."; (iv) December 1st, 2021 suspension without pay for dereliction of duty.

Proposed Amended Complaint ¶ 17, at 6-7.

> Nyce:
>
> (i) On June 1st, 2021 for placing "wrong" information on an arrest warrant, submitting it to Magistrate Court and then to the Carlsbad Police Dispatch to be entered into NCIC containing inaccurate information. When confronted by a Dispatcher Defendant Nyce was rude and arrogant and walked out. In addition, when Defendant Nyce was asked about the original paperwork by his supervisor, Defendant Nyce claimed falsely that he did not have the original paperwork but had given it to the court staff. This statement was false but Defendant Nyce's untruthfulness was hidden from Plaintiffs. Defendant Nyce's incompetent

> preparation of an arrest warrant lead (sic) to three outstanding warrants being issued for the same person. Detective Nyce had improperly attempted to go to the Court and get the warrants quashed. Nyce had even "provided the staff member [at the court] with a pre-signed arrest warrant form with Judge Jane Schuler Gray's signature on it." Instead of providing additional training on how to properly prepare and submit affidavits from arrest, Defendant Nyce was given a written warning by his supervisor; (ii) On or about June 7th, 2021, for casting doubt on the integrity, honesty, moral judgment or character of his supervisor, bringing discredit to the police department and impair (sic) the police department's efficient and effective operation; (iii) On December 9th, 2021, Defendant Nyce was reprimanded for failure to follow instructions, directives, or direct orders; violation or disregard of policy, regulation, or rule contained in the policy and procedure manual [and] dereliction of duty.

Proposed Amended Complaint ¶ 21, 8-9. The Plaintiffs also assert that "Defendants Landgraf and Nyce had transferred from another law-enforcement agency and were known to have a know-it-all attitude that made them incorrigible to supervision, correction, training or education which was well known to Supervisory personnel at all times material to this complaint." Proposed Amended Complaint ¶ 22, at 9.

The Court determines that these instances are not sufficient to establish that the City of Carlsbad has a policy of failing to train, with deliberate indifference, their officers with regards to "making improper detentions and arrests." Proposed Amended Complaint ¶ 60, at 17. First, the Court notes that all of Landgraf's and Nyce's alleged infractions occur after the officers' challenged action in this case. See Proposed Amended Complaint ¶¶ 41, 46, at 13, 14 (explaining that Landgraf and Nyce seek, without probable cause, the arrest of A. Parraz on November 19, 2020, and an arrest warrant for R. Parraz on November 20, 2020). Accordingly, none of the alleged facts in either complaint allow the Court to determine that, at the time of the challenged occurrence, the City of Carlsbad acts with deliberate indifference to train their officers on improper detentions and arrests. Further, none of the alleged facts even have a causal relationship between the officers' actions and the challenged unconstitutional action -- improper arrests. The majority of these facts demonstrate only, at most, that the officers are unprofessional or difficult in the workplace; no alleged

relationship exists between unprofessionalism in the workplace and unconstitutional arrests. The recitation of these facts, therefore, does not help support a finding that the City of Carlsbad is liable for failure to train its officers on proper arrest procedures. The only alleged fact that pertains to improper arrests is Nyce's June 1, 2021, incident where he puts the incorrect information on an arrest warrant, for which he receives a warning from his supervisor. See Proposed Amended Complaint ¶ 21, 8-9. One isolated incident, however, is not sufficient to support a claim of municipal liability for failure to train. See Waller v. City & Cnty. of Denver, 932 F.3d 1277, 1285 (10th Cir. 2019)("To satisfy the stringent deliberate indifference standard, '[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary.''")(quoting Connick v. Thompson, 563 U.S. 51, 62 (2011)). Accordingly, the Court determines that the Proposed Amended Complaint's alleged policy:

> The failure of the City of Carlsbad to so discipline these Defendants demonstrates the existence of an entrenched culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference the making of improper detentions and arrests,

Proposed Amended Complaint ¶ 60, at 17, is not sufficiently supported by alleged facts to support a Monell claim against the City of Carlsbad.

At the hearing, the Plaintiffs also highlight the facts alleged in their complaints that Landgraf misrepresented the fact that she was a certified New Mexico Law Enforcement Officer in good standing to the City of Carlsbad when she was hired, and that "[t]he Carlsbad Police Department knowingly failed to disclose these misrepresentations by Landgraf and allowed her to return to duty despite her inability to perform the duties of a law-enforcement officer because of her compromised truthfulness." Proposed Amended Complaint ¶ 13, at 5. See Proposed Amended Complaint ¶¶ 9-13, at 4-5. See Tr. at 22:2-4 ("Policy and custom of hiring Brady compromised officers.")(Dixon). First, the Court notes that the Plaintiffs do not allege that the City of Carlsbad has a policy of hiring

Brady compromised officers in either complaint. Second, the Court concludes that one alleged isolated incident of allowing an officer to remain on the force, after she lies during her hiring process, is insufficient to show a practice so permanent and well-settled that it constitutes a custom or usage within the force of law. Finally, the Court determines that there is no causal relationship between allowing officers who lie on their hiring applications to remain on the force, and the constitutional violation which is the basis of the Monell claim -- unlawful arrests. For all three of these reasons, the Court determines that these pled facts do not allow the Monell claim to survive the pleading stage.

The Plaintiffs also spend a majority of time discussing supervisory liability, and assert as another reason why their Monell claim survives the pleading stage that "Defendant City of Carlsbad at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers," Count II Response at 7, because the City of Carlsbad changes its policy on April 8, 2021, requiring that, moving forward, the criminal complaint packet be reviewed and approved by the Detective Supervisor before going to the DA's office or a judge as a result of "'continuous hiccups with paperwork.'" Count II Response at 7 (quoting Complaint ¶ 9). The Plaintiffs assert that "a claim for inadequate supervision by the City of Carlsbad has been alleged because a long-time policy of failing to review criminal complaints for factual and legal accuracy had directly lead to the arrest of Plaintiffs." Count II Response at 7. Supervisory liability, however, is not the same thing as Monell liability for municipalities, and municipalities cannot be held liable on a theory of supervisory liability. See Schneider v. City of Grand Junction Police Dept., 717 F.3d 760, 769 (10th Cir. 2013)("In contrast to individual supervisor liability, we have explained that nothing in Iqbal changed the 'longstanding interpretation' of § 1983's standards for imposing municipal liability."). Further, the fact that the City of Carlsbad changes their official policy regarding criminal complaint packets does not establish that, prior to this change, the City of

Carlsbad had a policy of failure to train, with deliberate indifference or otherwise, their officers with regards to constitutional arrest procedures. Accordingly, this alleged fact does not support a Monell claim either.

The Court concludes that all of the policies, customs, or practices which the Plaintiffs plead as basis to support a Monell claim are insufficiently alleged, and, therefore, the Monell claim against the City of Carlsbad cannot survive the pleadings stage. Accordingly, the Court grants the Count II Motion. Further, because the Court considers the Proposed Amended Complaint in connection with determining the sufficiency of the Monell claim, and determines that the facts alleged in the Proposed Amended Complaint are not sufficient to allow the Monell claim to proceed, the Court denies the Motion to Amend as futile. See Tr. at 26:23-27:6 (explaining in response to the Court's question that there is nothing in the proposed Amended Complaint other than changes to bolster the Monell claim).

**IT IS ORDERED** that: (i) the Motion of Defendants the City of Carlsbad, Joey Landgraf and Tim A. Nyce for Partial Summary Judgment as to Count IV of Plaintiff's Complaint, Alleging False Arrest and Imprisonment Pursuant to the New Mexico Tort Claims Act, filed August 15, 2023 (Doc. 9), is granted; (ii) the Motion of Defendant City of Carlsbad for Partial Judgment on the Pleadings as to Count II of Plaintiffs' Complaint Asserting a Claim of Municipal Liability Pursuant to 42 U.S.C. § 1983, filed August 15, 2023 (Doc. 10), is granted; and (iii) the Plaintiffs [sic] Motion to File First Amended Complaint Pursuant to Fed. R. Civ. Proc. 15 (a)(2), filed August 29, 2023 (Doc. 18), is denied.



UNITED STATES DISTRICT JUDGE

*Counsel:*

Eric D. Dixon
Eric D. Dixon, Attorney and Counselor at Law, P.A.
Portales, New Mexico

*Attorneys for the Plaintiffs*

Dillon Fisher-Ives
Jared Najjar
Virtue & Najjar, PC
Santa Fe, New Mexico

*Attorneys for the Defendants*